# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LENAR JOHANAN LOPEZ LOPEZ,

                Petitioner,              Case No. 25-cv-13802

v.                                   Hon. Jonathan J.C. Grey

KEVIN RAYCRAFT, *et al.*,

                Respondents.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S WRIT OF HABEAS CORPUS (ECF No. 1)

## I.    INTRODUCTION

Before the Court is Petitioner Lenar Johanan Lopez Lopez's ("Lopez") petition for writ of habeas corpus ("petition"), filed pursuant to 28 U.S.C. § 2241, alleging he is being unlawfully detained at the North Lake Correctional Facility, in violation of the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. (ECF Nos. 1, 3.) Immigration removal proceedings are currently pending against Lopez.

The petition is fully briefed (ECF Nos. 3–5.) On December 17, 2025, the Court held a hearing on the petition and issued a bench order

**GRANTING IN PART AND DENYING IN PART** the petition.[1] For the reasons below, this Court finds that Lopez's detention without a bond hearing violates his due process rights and **ORDERS** respondents to provide Lopez with an individualized bond hearing before an Immigration Judge ("IJ") **on or before December 24, 2025**, or immediately release Lopez from custody. The Court, however, **DENIES WITHOUT PREJUDICE** Lopez's request for immediate release.

## II.  BACKGROUND

Lopez is an 18-year-old citizen of Nicaragua who has resided in the United States since 2024. (ECF No. 1, PageID.8.) Lopez allegedly entered the United States without inspection as an unaccompanied child on February 2, 2024. (*Id.*, PageID.2–3.) He emigrated to the United States as "a last resource to protect himself from danger in his home country." (*Id.*, PageID.8.) Initially, Lopez lived with a cousin and his family in Rockford, Tennessee. (*Id.*) Instead of filing documents to become his legal guardian, his family "abandoned [Lopez] sometime around May 2024." (*Id.*, PageID.3.) Lopez then moved to Detroit, where he resided until his detention. (*Id.*, PageID.8.) In Detroit, Lopez lived with Rachel Ann

---

[1] On December 17, 2025, the Court also issued a text-only order.

Nogueras Esckelson, a U.S. Citizen who considers Lopez family. (*Id.*, PageID.9.) Lopez turned 18 years old on June 10, 2025. (*Id.*, PageID.3.) He has no criminal history and has been gainfully employed as a framer in construction. (*Id.*, PageID.9.)

On July 8, 2025, United States Immigration and Customs Enforcement ("ICE"), in coordination with the United States Department of Justice, announced a new governmental policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission." (*Id.*, PageID.13–14.) This policy "claims that all persons who entered the United States without inspection are subject to mandatory detention without bond under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended." (*Id.*, PageID.14.)

On September 29, 2025, Lopez was arrested by ICE while working at a construction site in Troy, Michigan. (*Id.*, PageID.9.) Lopez was first transported to ICE's Detroit Office, where he was processed, and he was then sent to North Lake Correctional Facility, where he remains detained. (*Id.*) Lopez is charged with having entered the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.*; *see also* ECF No. 4-2.)

3

On November 26, 2025, Lopez filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241, within which he alleges violations of the INA and the Fifth Amendment Due Process Clause. (ECF No. 1.) Lopez asserts that, having been charged with entering the United States without inspection and pursuant to 8 U.S.C. § 1226(a), he is entitled to a bond determination. (*Id.*, PageID.3.)

Respondents argue that Lopez's detention is lawful under the INA. Specifically, they assert that Lopez is properly detained pursuant to § 1225(b)(2), a mandatory detention provision, and not § 1226(a), a discretionary detention framework, so his detention does not violate his due process rights. (ECF No. 4.)

## III.  LEGAL STANDARD

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 776 (E.D. Mich. 2025) (quoting 28 U.S.C. § 2241(c)(3)). Two sections of the INA principally govern detention of noncitizens pending removal proceedings. *See* 8 U.S.C. §§ 1225, 1226.

Section 1225 is a *mandatory* detention provision that states, in relevant part:

> **(2)** INSPECTION OF OTHER ALIENS
> **(A) In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "[A]dmission" and "admitted" are defined as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1226 instead provides for a *discretionary* detention framework. It states, in relevant part:

> **(a)** ARREST, DETENTION, AND RELEASE
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—

5

> (A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General …

8 U.S.C. § 1226(a). Section 1226(c), however, provides for mandatory detention of certain inadmissible or deportable noncitizens who have been charged with, arrested for, convicted of, or admit having committed specific listed crimes.[2] Unlike noncitizens detained under § 1225, and those who are excepted under § 1226(c), "noncitizens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e. [sic] a bond hearing) before an Immigration Judge." *Lopez-Campos*, 797 F. Supp. 3d at 777 (citing 8 C.F.R. §§ 1236.1(c)(8), (d)(1)). "The IJ evaluates whether there is a risk of nonappearance or danger to the community." *Id.* (citing *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006)).

## IV.  ANALYSIS

### A.  **Proper Respondents**

Lopez files this petition against ICE Detroit Field Office Director Kevin Raycraft ("Raycraft"), North Lake Processing Center Warden Angela Dunbar ("Dunbar"), Secretary of the United States Department

---

[2] This section was added by Congress in January 2025 with the passing of the Laken Riley Act. Pub. L. No. 119-1, 139 Stat. 3 (2025).

of Homeland Security Kristi Noem ("Noem"), United States Department of Homeland Security ("DHS"), United States Attorney General Pamela Bondi ("Bondi"), and the Executive Office for Immigration Review ("EOIR").

Relying on two district court opinions, the government argues: (1) the proper respondent to this action is Dunbar, "the warden of petitioner's detention facility in the Western District," and (2) only the Western District has habeas jurisdiction over this suit. (ECF No. 4, PageID.77 (citing *Aguilar v. Dunbar*, No. 2:25-cv-12831, 2025 WL 3281540, at *2–7 (E.D. Mich. Nov. 13, 2025) (transferring immigration habeas case to Western District) (White, J.)), and *Quintero-Martinez v. Raycraft*, No. 2:25-cv-13536, ECF No. 9, (E.D. Mich. Nov. 19, 2025) (Murphy, C.J.) (same).)[3] The cases cited by the government rely on *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) for the proposition that Dunbar, who is the "immediate *physical* custodian, as opposed to someone who exercises *constructive legal* custody over the petitioner" is the "proper respondent." *Aguilar*, 2025 WL 3281540, at **2–3 (emphasis

---

[3] Alternatively, the government asserts that Raycraft is the "only proper respondent … because he is vested with the immediate legal control of [Lopez's] detention." (*Id.*, PageID.78.)

in original) (citing *Padilla*, 542 U.S. at 438–440).

Recently, a court in the Eastern District of Michigan considered this argument, which was raised by the government in a similar habeas petition, and found that, based on *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003), Raycraft and Bondi were, in fact, properly named as respondents. *See Romero Garcia v. Raycraft*, No. 25-cv-13407, 2025 WL 3252286, at *3, *5 (E.D. Mich. Nov. 21, 2025).

This Court agrees with the reasoning in *Romero Garcia*:

> In *Roman*, the Sixth Circuit held that the INS District Director[4] for the district where a detention facility is located is the proper respondent for a petitioner facing removal proceedings, because the District Director has power over that petitioner. 340 F.3d at 320. In *Padilla*, the Supreme Court rejected that logic of legal "power" over a person's physical custody as a general matter and held that in habeas, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." 542 U.S. at 435. However, while setting a general rule, the Court explicitly left open the question of "whether [a remote supervisory official] is a proper respondent to a habeas petition filed by [a noncitizen] detained pending deportation." *Padilla*, 542 U.S. at 435 n.8. Courts in this district and circuit have therefore found that specifically for habeas proceedings with petitioners facing deportation, *Roman*'s rule still applies, because application of that rule was explicitly left open by *Padilla*.

---

[4] "INS 'District Directors' are the same as today's ICE Field Office Directors." *Romero Garcia*, 2025 WL 3252286, at *2 n.2 (citing *Kholyavskiy v. Achim*, 443 F.3d 946, 948 n.1 (7th Cir. 2006)).

*Romero Garcia*, 2025 WL 3252286, at *2. Just as in *Romero Garcia*, this Court finds that Lopez is currently in removal proceedings and that Raycraft, who controls the release of Lopez, is properly named a respondent.

As for Dunbar, it appears that, without a directive from Raycraft, Dunbar has no power to release Lopez. However, "because Dunbar does maintain physical custody of [Lopez], albeit at the direction of Raycraft, a suit against her is also appropriate under *Padilla*." *Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at *2 (E.D. Mich. Dec. 11, 2025). Further, "[k]eeping U.S. Attorney General Bondi in the case is also warranted to ensure that Respondents maintain authority to enforce any grant of habeas relief and order that [Lopez] receive a bond hearing or, alternatively, be released even if [Lopez] is transferred out of the district under Raycraft's control." *Id.* (citing *Romero Garcia*, 2025 WL 3252286, at *5).

Finally, the Court takes judicial notice that, although not alleged in Lopez's petition, "[a]liens remaining in detention for extended periods are often transferred several times during their detention." *Roman*, 340 F.3d 326. Though the Court finds no mendacity in this case, it takes

9

judicial notice of the fact that these transferers routinely happen in immigration removal proceedings and that these routine transfers could qualify as extraordinary circumstances to find that there is more than one location for jurisdiction. *Id.* at 325–327.

Thus, the Court finds that Raycraft, Dunbar, and Bondi are properly named respondents in this action and **DISMISSES** all other respondents, specifically, Noem, DHS, and EOIR. Further, because Raycraft remains a respondent, the Court finds no need to transfer the petition to the Western District of Michigan.

### B.   *Bautista v. Santacruz* Nationwide Class

The Court is aware of *Bautista v. Santacruz*, No. 5:25-cv-01873, (C.D. Cal.), the California case where the court certified a class action of non-citizens who, like Lopez, are in immigration detention and being denied access to a bond hearing. *See* 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). Both parties discuss *Bautista* and disagree about the case's effect on Lopez and his continued detention without access to a bond hearing. However, although the Court agrees with the reasoning of the *Bautista* court vis a vis due process violations and class certification, the Court need not decide the effects of the *Bautista* decision because it finds

10

that, based on the merits of Lopez's petition, Lopez is entitled to habeas relief.

## C.   Administrative Exhaustion

Before determining the merits of this petition, the Court also addresses respondent's argument that the Court should require Lopez to exhaust administrative remedies before pursuing his habeas petition in this Court. (ECF No. 4, PageID.80.) The parties agree that administrative exhaustion is not statutorily required here but disagree whether prudential exhaustion should be applied. (*See id.*; *see also* ECF No. 3, PageID.58.) The Court finds that exhaustion is unnecessary.

"Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.*; *see also Shearson v. Holder*, 725 F.3d 588, 593–594 (6th Cir. 2013). "When neither statute nor regulation says anything about exhaustion, the Supreme Court has held that a court may still impose an *implied* exhaustion rule as long as the rule comports with the statutory scheme." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019) (emphasis in original) (citations omitted). This is known as prudential

11

exhaustion. *Id.*; *see also Lopez-Campos*, 797 F. Supp. 3d at 778 (internal

quotation marks and citation omitted) ("Prudential exhaustion is a judge-

made doctrine that enables courts to require administrative exhaustion

even when the statute or regulations do not.").

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015

WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)). "But even if prudential

exhaustion would otherwise apply, courts may waive such exhaustion if

the 'pursuit of administrative remedies would be a futile gesture' or if the

petition presents a 'legal question . . . fit for resolution and delay means

hardship.'" *Morales-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL

3124695, at *2 (E.D. Mich. Nov. 7, 2025) (quoting *Shearson*, 725 F.3d at

594; *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13

(2000)).

As other courts in this district have found in similar habeas cases,[5] all three prudential exhaustion factors weigh against requiring exhaustion here. First, "the issues raised in the habeas petition are purely legal in nature and do not require the agency to develop the record." *Lopez-Campos*, 797 F. Supp. 3d at 778. Indeed, as Lopez asserts, there are no factual disputes. Moreover, this Court, not the agency, has the expertise to engage in statutory interpretation and analyze constitutional claims. Second, "because [Lopez's] habeas petition includes a due process claim, the administrative scheme . . . is likely futile." *Id.* Third, "administrative review is not likely to change [r]espondent's position that Section 1225(b)(2)(A) applies in this context." *Id.* "The Government's immigration policy makes clear that mandatory detention is the position to be taken, and this is being done in conjunction with the Department of Justice." *Id.*

The Court also waives exhaustion because the pursuit of administrative remedies is futile here and delay in resolving the legal question at issue means hardship to Lopez. As Lopez notes, requiring him

---

[5] *See e.g.*, *Lopez-Campos*, 797 F. Supp. 3d at 778–779; *Velasco-Sanchez*, 2025 WL 3553672, at *5; *Morales-Martinez*, 2025 WL 3124695, at *2; *Casio-Mejia v. Raycraft*, No. 2:25-cv-13032, 2025 WL 2976737, at *5 (E.D. Mich. Oct. 21, 2025) (collecting cases).

to wait for an IJ to deny a bond hearing or for the Board of Immigration Appeals ("BIA") to deny a bond appeal would be futile. Respondents themselves acknowledge that Lopez is "ultimately unlikely to obtain the relief he seeks through the administrative process based on a recent decision by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I &N Dec. 216 (BIA 2025), which is binding on the agency and the immigration courts, and which conclusively rejects petitioner's arguments in this case."[6] (ECF No. 4, PageID.80.) *See also Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981) (recognizing that administrative exhaustion may be excused if it would be futile, among other exceptions). Here, where respondents have "predetermined the disputed issue," seeking bond would be futile. *Cooper v. Zych*, No. 09-CV-11620, 2009 WL 2711957, at *2 (E.D. Mich. Aug. 25, 2009); *see also McCarthy*, 503 U.S. at 148 (same).

---

[6] While BIA decisions may be binding upon the agency at large, they are not binding on this Court. *See* 8 C.F.R. § 1003.1(g)(1) ("[D]ecisions of the [BIA] …are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States."); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990) (noting agency rulings are binging on all components of the agency itself but not federal courts); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (holding that federal courts "must exercise independent judgment in determining the meaning of statutory provisions").

Moreover, a delay in resolving the legal questions at issue undoubtedly poses hardship to Lopez. The government would have Lopez wait for an IJ to deny a bond hearing[7] and the BIA to then deny a bond appeal, which is not only futile but would take too long. *See, e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025) (finding BIA bond appeals on average take six months to complete). Lopez was scheduled for a master hearing before the immigration court on December 11, 2025 (*see* ECF No. 4-3, PageID.105), and there is no information on any future hearings for this case. *See* EOIR, *Automated Case Information*, https://acis.eoir.justice.gov/en/caseInformation (last visited Dec. 22, 2025) (stating "[t]here are no future hearings for this case" and that "[t]his case is pending" when Lopez's A-Number and nationality is input). It is not possible to know how long Lopez will be detained without the opportunity for a bond hearing. Indeed, Courts in this district have consistently held that "[w]hen the liberty of a person is at stake, every day that passes is a critical one, and the Court cannot fault [a detainee] for taking appropriate measures to pursue his claims

---

[7] At Lopez's November 6, 2025 master hearing before an IJ, "the IJ confirmed on the record that if Lopez were to request bond, the IJ would find that he has no jurisdiction to grant a bond." (ECF No. 1, PageID.10.)

through the habeas process, with the expectation that his claims would be met with a sense of urgency, and he would receive a decision in a more expedient manner." *See Lopez-Campos*, 797 F. Supp. 3d at 779. The same holds true for Lopez.

Lastly, the Sixth Circuit has held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) (citation omitted) ("Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") Since Lopez's petition includes a non-frivolous due process claim, waiting for an IJ decision and BIA appeal is senseless.

Because the prudential exhaustion factors weigh against exhaustion, and because exhaustion would be futile and not provide Lopez with relief in a timely manner, the Court waives administrative exhaustion and addresses the merits of Lopez's petition.

## D.   Statutory Interpretation

The central question of this habeas petition is whether the mandatory detention framework under §1225(b)(2)(A) or the

discretionary detention framework under § 1226 applies to Lopez. Lopez maintains that "the structure, text, and legislative history of the INA make clear that § 1225 applies only to the inspection of recent arrivals at or near the U.S. border," whereas § 1226 encompasses people like Lopez who have been residing in the interior of the country. (ECF No. 3, PageID.41.) Lopez also argues that the specific text of § 1225(b)(2)(A) further demonstrates that it does not apply to him since he is not an "applicant for admission" who is "seeking admission" before an "examining immigration officer." (*Id.*) Respondents counter that Lopez is properly detained under § 1225(b)(2) because he meets every element in the text of the statute; and even if the text were ambiguous, the structure and history of the statute support the agency's interpretation. (ECF No. 4, PageID.81.)

Having reviewed many of these cases, this Court is particularly persuaded by the reasoning in two opinions: *Lopez-Campos*, 797 F. Supp. 3d 771; and *Bautista*, 2025 WL 3289861. For the reasons stated below, the Court finds that Lopez should be considered detained under § 1226(a) and is thus entitled to a bond hearing.

### *i.  Interpretation of the Plain Text*

The Court begins its review on the merits by examining the plain text of the relevant statutory provisions. "'A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted); *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (discussing how courts "must give effect to the clear meaning of statutes as written."). Each word of the statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" *Kentucky*, 23 F.4th at 603 (citations omitted). "Barring unusual cases, '[s]tatutory definitions control the meaning of statutory words.'" *Bautista*, 2025 WL 3289861, at *8  (citation omitted). Applying these canons here, the Court finds that Lopez is unlawfully detained under § 1225(b)(2)(A), though he could properly be detained under § 1226(a).

As the court in *Bautista* reasoned, the INA's definition section "readily resolves" the parties' dispute over statutory interpretation and supports Lopez's reading of the statute. 2025 WL 3289861, at **8–9. Section 1225(b)(2)(A) applies to a noncitizen who is "an applicant for

admission," which § 1225(a)(1) defines, in relevant part, as a noncitizen "present in the United States who has not been admitted[.]" Section 1101(a)(13)(A) of the INA's definition section provides that "admitted" means "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." Thus, applicants for admission are noncitizens who have not "lawful[ly entered] into the United States *after inspection and authorization by an immigration officer*." *See* § 1101(a)(13)(A) (emphasis added); § 1225(a)(1); *see also Bautista*, 2025 WL 3289861, at **8–9.

Critically, applying the INA's definition of "admitted" to § 1225(b)(2)(A) unambiguously requires applicants for admission to have undergone inspection and authorization by an immigration officer. This is further supported by the title of § 1225, which addresses "[i]nspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." *See Dubin v. United States*, 599 U.S. 110, 120–121 (2023) (internal quotation marks and citations omitted) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute."). The respondents' definition, which includes all unadmitted

noncitizens present in the United States regardless of their proximity to the border and the length of time they have been present in the United States (ECF No. 4, PageID.82), is clearly incompatible with the definition set forth in § 1225(b)(2)(A). To adopt respondents' definition, the Court would have to entirely ignore the INA's definition section—specifically, § 1101(a)(13)(A)—which is contrary to what statutory interpretation dictates. Indeed, as respondents state, "'[w]hen a statute includes an explicit definition, [courts] must follow that definition,' even if it varies from a term's ordinary meaning." (ECF No. 4, PageID.82 (quoting *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018)).) Respondents, however, ignore the INA's *explicit* definition of "admitted." The Court cannot do the same.

Importantly, respondents also ignore several words in § 1225(b)(2)(A). *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 431 (2023) (citation omitted) ("'[E]very clause and word of a statute should have meaning.'"). Section 1225(b)(2)(A) states, "[i]n the case of an alien who is an applicant for admission, if the *examining immigration officer* determines that an alien *seeking* admission is *not clearly and beyond a doubt entitled to be admitted*, the

20

alien shall be detained for a proceeding under section 1229a of this title." *Id.* (emphasis added). As courts in this district and other districts have already explained, "seeking" "implies action." *See, e.g.*, *Lopez-Campos*, 797 F. Supp. 3d at 781; *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-atc, 2025 WL 3565348, at *6 (W.D. Tenn. Dec. 12, 2025) (finding that "seeking" suggests action).

Respondents' interpretation is that any noncitizen present in the United States unlawfully, who does not agree to immediately depart, is automatically and perpetually "seeking admission." (*See* ECF No. 4, PageID.84–85.) Such a reading is far too broad, as evidenced by even respondents' own example. Respondents contend that "[i]n removal proceedings, if an unlawfully admitted noncitizen does not accept removal, he can seek a lawful admission . . . For instance, petitioner cannot plausibly challenge his inadmissibility, but he may apply to cancel his removal and adjust his status[.]" (*Id.*, PageID.84.) Indeed, in this example, the noncitizen had to *apply* for cancellation of removal—in other words, he had to actively seek some kind of immigration relief to be considered "seeking admission." This implies, if not concedes, that the noncitizen was not seeking admission when he was detained.

Lopez does not satisfy the elements of § 1225(b)(2)(A). At the time of apprehension, Lopez was not presenting himself for admission at or near the border, nor was he applying for any kind of immigration relief that could possibly render him a noncitizen "seeking admission" by respondents' reading.[8] Moreover, Lopez was never seen by an "examining immigration officer," nor has he received a determination that he was "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Lopez notes that "immigration officer" is defined in the statute's implementing regulations as "the following employees of the *Department of Homeland Security*[.]" 8 C.F.R. § 1.2 (emphasis added). The definition

---

[8] As another court aptly found:

> This understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for several years.

*Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025).

does not encompass immigration judges, who are employees of the Department of Justice. *Id.* Respondents fail to respond to the argument that an examining immigration officer never determined that Lopez was not clearly and beyond a doubt entitled to be admitted.

On the other hand, Lopez's circumstances fall squarely within § 1226(a), which is similarly unambiguous. Looking to the plain language of § 1226, which deals with the "apprehension and detention" of noncitizens, it provides that, upon "a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). This provision applies because Lopez was apprehended while working at a construction site and subsequently detained, and removal proceedings are pending against him in immigration court. Therefore, the Attorney General "may continue to detain [him]" and "may release [him]" on bond. *Id.* While this language is discretionary, the statute provides that the noncitizen has the right to request a custody determination or redetermination (i.e., bond hearing) before an IJ. *Id.*; *see also* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

23

The Supreme Court's interpretation of when these two statutory provisions apply supports this Court's interpretation. In *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), the Supreme Court noted that noncitizens covered by § 1225(b)(1) are those subject to expedited removal, which the government concedes does not apply to Lopez. (ECF No. 4, PageID.85 ("petitioner is not in expedited removal").) Then, the Supreme Court explained that § 1225(b)(2) "serves as a catchall provision that applies to all *applicants for admission* not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287 (emphasis added).

Moreover, in a separate section of the opinion, the Supreme Court recognized that "*[e]ven once inside the United States*, [noncitizens] do not have an absolute right to remain here . . . Section 1226 generally governs the process of arresting and detaining that group of [noncitizens] pending their removal." *Id.* at 288. The Supreme Court concluded,

> In sum, U.S. immigration law authorizes the Government to detain certain [noncitizens] *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id.* at 289 (emphasis added). The Supreme Court thus clearly envisioned that § 1225(b)(2) and § 1226 exist in harmony and apply to different

24

groups of noncitizens. Indeed, in its analysis, the Supreme Court did not conflate "applicants for admission" with noncitizens already inside the United States more generally.

Respondents admit that *Jennings* characterized § 1226 as applying to noncitizens present in the United States but then argue that the Supreme Court "made it clear that this category of noncitizens only included those that were admitted" because the Supreme Court cited § 1227(a), which only applies to noncitizens in and admitted to the United States. (ECF No. 4, PageID.93.) Respondents' reading of *Jennings* is remarkably selective. Read in its proper context, as Lopez asserts, the Supreme Court cited § 1227(a) as only an "example" of noncitizens who are present in the United States but who may still be detained under § 1226(a) pending their removal. *Jennings*, 583 U.S. at 288.

For the reasons stated above, under the plain language of § 1225(b)(2)(A), "applicants for admission" do not include noncitizens already in the United States who, like Lopez, were not seeking admission and were not determined inadmissible by an examining immigration officer. Instead, under its plain language, § 1226(a) governs Lopez's detention.

### ii. *Interpretation of the Statutory Framework*

As the court in *Bautista* found, Lopez's and this Court's interpretation of these statutory provisions is the only interpretation that "produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (citations omitted). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93, 101 (2012) (internal quotation marks and citation omitted). "[R]easonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 321 (2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Respondents' interpretation of the INA would render § 1226(c) superfluous. "Section 1226(a) states that noncitizens detained via a warrant while facing removal proceedings may be released on bond or parole '[e]xcept as provided in subsection (c).'" (ECF No. 3, PageID.45 (quoting 8 U.S.C. § 1226(a)).) In other words, § 1226(c) exempts certain noncitizens from § 1226(a)'s discretionary detention scheme by virtue of

26

those noncitizens' criminal histories. Notably, § 1226(c)(1)(E) authorizes the Attorney General to mandatorily detain noncitizens: (1) who are inadmissible under § 1182(a)(6)(A)—the same ground of inadmissibility with which Lopez has been charged; **and** (2) whose criminal history meets the criteria outlined in § 1226(c)(1)(E)(ii).[9] To accept respondents' reading—that § 1225(b)(2)(A) subjects every noncitizen who did not lawfully enter the country to mandatory detention—"would strip [§] 1226(c) of meaning," *Monge-Nunez*, 2025 WL 3565348, at *6, which the canons of statutory interpretation do not allow. *See Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (citation omitted) (rejecting an interpretation of a statute that "render[s] an entire subparagraph meaningless").

It is also worth noting that Congress only recently added § 1226(c)(1)(E) through the enactment of the Laken Riley Act. *See* Pub. L. No. 119-1, 139 Stat 3 (Jan. 29, 2025). "[W]hen Congress acts to amend a statute, we presume it intends its amendments to have real and

---

[9] The Court also notes that the explicit mention in § 1226 of the same ground of inadmissibility with which Lopez has been charged—i.e., § 1182(a)(6)(A)—undercuts respondents' argument that "there is no [positive repugnancy] between § 1225(b)(2) and § 1226(a)" and that § 1226(a) only "reaches noncitizens that are not covered by § 1225(b)(2)." (ECF No. 4, PageID.90.)

substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). "If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless and this Court, too, will not find that Congress passed the Laken Riley Act to perform the same work that was already covered by § 1225(b)(2)." *Lopez-Campos*, 797 F. Supp. 3d at 784 (internal quotation marks omitted) (quoting *Maldonado v. Olsen*, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Beyond just rendering § 1226(c) superfluous, respondents' position "cannot be harmonized with other portions of the INA." *Bautista*, 2025 WL 3289861, at *10. "If the Court were to accept [r]espondents' position that all noncitizens already in the country (regardless of whether they were inspected and authorized by an immigration officer) were 'applicants for admission,' then there would be no possible set of noncitizens to which § 1226(a) would apply." *Id.* The Court cannot construe § 1225(b)(2) in such a way that would make other sections of the INA "inoperative or superfluous, void or insignificant." *Corley*, 556 U.S. at 314 (citation omitted).

"Where statutory language is unambiguous and 'the statutory scheme is coherent and consistent,' the Court must end its inquiry." *Bautista*, 2025 WL 3289861, at *11. Because the Court finds the statutory provisions to be unambiguous and consistent with Lopez's interpretation, the Court does not undertake consideration of other canons of construction, legislative history and intent, or agency practice. *See id.* (*See also* ECF No. 3, PageID.44–45, 50–51; ECF No. 4, PageID.93–97.)

Accordingly, given the plain text of the statutory provisions, the broader context of the statute, and the INA's recent amendment with the Laken Riley Act, the Court finds that § 1226(a)'s detention framework governs Lopez's detention, and he is entitled to a bond hearing.

### E.    Due Process

The Fifth Amendment to the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).

Respondents do not dispute that Lopez is entitled to due process; instead, they contend that he does not present a plausible due process claim. Specifically, Respondents assert that "detention of [Lopez] under 8 U.S.C. § 1225(b)(2) is required by law that is binding on the agency … [and thus] [t]he agency does not violate [] [Lopez's] due process rights by complying with controlling law." (ECF No. 4, PageID.79.) Respondents also note that "[Lopez] was given notice of the charges against him, he has access to counsel, he has attended a hearing with an immigration judge, he has the right to request bond and appeal any bond decision by the immigration court, and he has been detained by ICE for a matter of months." (*Id.*)

Had the Court agreed that § 1225(b)(2), as opposed to § 1226(a), applies to Lopez, respondents' argument may have merit. But the Court does not agree. As discussed above, § 1226(a) governs Lopez's detention. Accordingly, he is entitled to the process outlined in § 1226(a)—a bond hearing at which the IJ must make an individualized custody determination. No such hearing has been held. "Therefore, without first evaluating [Lopez's] risk of flight or dangerousness, his detention is a

violation of his due process rights." *Lopez-Campos*, 797 F. Supp. 3d at 785.

Further, "[t]he Sixth Circuit has also applied the balancing test laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the adequacy of process in the context of civil immigration confinement." *Id.* Under the *Mathews* test, this Court must consider: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards;" and (3) "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors favor Lopez. First, Lopez's liberty is at stake. Second, the absence of a bond hearing inherently creates a high "risk of erroneous deprivation" of his liberty right. Third, respondents have not shown, and likely cannot show, that they have a significant interest in Lopez's continued detention. As correctly noted by Lopez, it would be nonsensical for "the government [to] complain about the administrative burden of providing hearings that it has provided for

decades." (ECF No. 3, PageID.57.) Accordingly, any interest respondents might have in fewer bond hearings does not outweigh Lopez's liberty interest or the risk of erroneous deprivation.

Thus, the Court agrees that Lopez's mandatory detention pursuant to § 1225(b)(2) violates his due process rights.

## V. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Lopez's petition for writ of habeas corpus (ECF No. 1) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that Respondents Noem, DHS, and EOIR are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Respondents Raycraft, Dunbar, and Bondi are enjoined from detaining Lopez on the basis of 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Lopez's petition for a bond hearing before the immigration court is **GRANTED** and **ORDERS** respondents to provide Lopez with an individualized bond hearing before an Immigration Judge, **on or before December 24, 2025**, or immediately release Lopez from custody.

**IT IS FURTHER ORDERED** that the Court **DENIES WITHOUT PREJUDICE** Lopez's request for immediate release.

**IT IS FURTHER ORDERED** that respondents shall file a status report with this Court **on or before December 31, 2025** to certify compliance with this order. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and the reasons for that denial. If the bond hearing did not occur, the status report shall include whether and when Lopez was released from detention.

**SO ORDERED.**

<u>**s/Jonathan J.C. Grey**</u>
JONATHAN J.C. GREY

DATE: December 22, 2025          United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 22, 2025.

**s/ S. Osorio**
Sandra Osorio
Case Manager
